# Exhibit 20

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF NEW YORK; STATE OF CONNECTICUT; STATE OF COLORADO; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NORTH CAROLINA; STATE OF OREGON; JOSH SHAPIRO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN, | Case No.  1:25-cv-12118-IT<br><br>DECLARATION OF JOHANNE MORNE |

Plaintiffs,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., in his official capacity as Secretary of the U.S. Health and Human Services; CENTERS FOR MEDICARE AND MEDICAID SERVICES; DR. MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare and Medicaid Services,

Defendants.

Page 1 -    DECLARATION OF JOHANNE MORNE
TBW/rn1/993784839

I, Johanne Morne, declare as follows:

1.      I am the Executive Deputy Commissioner at the New York State ("NYS") Department of Health ("DOH" or "Department"). I make this declaration from personal knowledge and the records of the agency that are kept in the regular course of its business. I would testify to the following if called as a witness.

2.      As the NYS DOH Executive Deputy Commissioner, I am responsible for administrative, operational, and programmatic oversight of the Department. I have been with the NYS DOH for more than 18 years and have held this position for almost two years. I have a graduate degree in education and counseling from The College of St. Rose. Prior to this role, I served as the Deputy Commissioner, Office of Health Equity and Human Rights for the NYSDOH. I was appointed in August 2022 to establish the new Office and serve as a member of the Department's Executive Leadership Team. From 2007 to 2022, I served in various programmatic and policy making positions in the AIDS Institute. I served as the Director from 2016 - 2022. As the Director of the AIDS Institute, I spearheaded the implementation of essential policy changes to promote expanded access to prevention, treatment, and care for Human Immunodeficiency Virus ("HIV"), sexually transmitted infections ("STI"), and Hepatitis C. This includes the successful advancement of the nation's first 'Ending the Epidemic' movement, the expanded access of pre-exposure prophylaxis as an HIV prevention tool, and the continued expansion of drug user health initiatives to reduce opioid overdose and infectious disease transmission. I served as a board member on the National Alliance of State and Territorial AIDS Directors ("NASTAD") from 2018-2022, sitting as Chair for three years, and was an advisory member to the CDC/ HRSA Advisory Committee on HIV, Viral Hepatitis, STI Prevention and Treatment. I have a 30-year career in which I have consistently contributed to the advancement of public health.

3.      Federal Medicaid funding comprises a significant percentage of NYS' budget. It is one of the largest sources of federal revenue for NYS.

Page 2 -    DECLARATION OF JOHANNE MORNE
TBW/rn1/993784839

**The New York State Medicaid Program**

4.    In NYS, the state Medicaid program, overseen by the DOH, provides comprehensive health coverage to around 7 million New Yorkers annually.[1] Medicaid pays for a wide range of services, depending on the enrollee's age, financial circumstances, family situation, or living arrangements through a large network of health care providers.

5.    To be eligible for NYS Medicaid, NYS residents must meet certain criteria, including, but not limited to, income level, age, household size, and other medical considerations. In 2014, NYS opted in to Affordable Care Act expanded Medicaid coverage, which expanded the eligible population. Any person who meets eligibility requirements is entitled to NYS Medicaid coverage.

6.    NYS provides Medicaid coverage through the state-administered Medicaid fee-for-service program and through managed care arrangements. The majority of NYS Medicaid members are covered under Medicaid Managed Care.[2] Medicaid fee-for-service and Medicaid Managed Care both cover family planning services and reproductive health services.[3]

7.    Medicaid-covered sexual and reproductive health care services are wide-ranging, and include family planning/contraception, STI screenings, diagnosis and treatment, and primary and preventative health care. Medically necessary abortion services are covered by NYS Medicaid as fully funded by the state with no federal matching funds. Federal funds do not pay for abortion care under NYS Medicaid.

8.    Free Access is a NYS Medicaid policy required by Federal law. Free Access applies to Medicaid Managed Care enrollees, and it allows enrollees to obtain family planning

---

[1] (https://www.health.ny.gov/health_care/medicaid/enrollment/).

[2] (https://www.health.ny.gov/health_care/managed_care/#:~:text=Medicaid%20Managed%20Care%20offers%20many,for%20themselves%20and%20their%20families).

[3] "Reproductive health services" includes, but is not limited to, abortion services.

Page 3 -    DECLARATION OF JOHANNE MORNE
TBW/rn1/993784839

and reproductive health services from any qualified Medicaid participating provider (in or out of a managed care plan's network), without a referral or prior approval of the health plan.

9.    NYS provides sexual and reproductive health service coverage to Medicaid eligible individuals and additionally to an expanded population through its Family Planning Benefit Program ("FPBP"), a public health insurance program for New Yorkers who need family planning services only. FPBP is a fee-for-service product. FPBP is intended to increase access to confidential family planning services and to enable teens, women, and men of childbearing age to prevent and/or reduce the incidence of unintended pregnancies. Individuals may be eligible if they meet residential, citizenship, and income requirements, and are not already enrolled in Medicaid.[4]

10.    The costs of covering Medicaid services, including sexual and reproductive health services, are shared between the state and federal government with a Federal Medical Assistance Percentage ("FMAP") that varies but generally provides 50% matching federal funding for most services, and up to 90% matching federal funds for defined family planning services. For example, if NYS Medicaid paid $100 for a covered family planning service, the federal government would pay between $50 and $90 in federal matching funds, and the state would pay the remaining $10 to $50.

11.    Reproductive healthcare services, such as STI testing and treatment, fall under the standard federal funding participation which is generally 50%. Abortion services, however, are 0% federally funded. As NYS is one of the most populous states in the country with nearly 20 million residents and a median age just under 40 years old,[5] many New Yorkers need sexual and reproductive health services.

---

[4]
(https://www.health.ny.gov/health_care/medicaid/program/longterm/familyplanbenprog.htm#:~:t
ext=You%20may%20be,health%20insurance%20coverage).

[5] (https://www.census.gov/programs-surveys/acs/data/data-via-ftp.html).

Page 4 -    DECLARATION OF JOHANNE MORNE
        TBW/rn1/993784839

12.     In State Fiscal Year 2024 (the most recent year for which complete data are available), about a quarter of NYS Medicaid Members, nearly 2 million individuals, received a covered reproductive healthcare service, inclusive of family planning benefit services.

13.     About 65% of total Medicaid enrollees are below the age of 45,[6] and over 30% of Medicaid enrollees are females of reproductive age (10-55 years). Whether enrolled in Medicaid or privately insured, however, New Yorkers in every area of the state need access to sexual and reproductive health services.

**Planned Parenthood Entities in New York State**

14.     There are five Planned Parenthood affiliates in NYS: Planned Parenthood of Central and Western New York, Planned Parenthood of Greater New York, Planned Parenthood Hudson Peconic, Planned Parenthood of the North Country and Upper Hudson Planned Parenthood. Among them, these Planned Parenthood entities currently operate 49 health centers in 35 counties across NYS.

15.     Planned Parenthood health centers in NYS are well known as reproductive healthcare and family planning providers. The reproductive healthcare and family planning services provided by Planned Parenthood affiliates include, but are not limited to: cancer screening, prevention services and procedures; pregnancy tests and counseling, including parenting and adoption; basic infertility services; referrals to meet client needs, including primary care, prenatal care, sexual and intimate partner violence assistance programs, and transportation providers; STI and HIV prevention education, infection testing, and treatment; contraception methods, counseling, and management; and abortion care. For many women, family planning and reproductive health care is the only form of primary health care they regularly receive.

---

[6] (https://www.kff.org/medicaid/state-indicator/medicaid-enrollees-by-age/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D).

Page 5 -   DECLARATION OF JOHANNE MORNE
                TBW/rn1/993784839

16. These five Planned Parenthood affiliates provide a substantial portion of all Medicaid-funded reproductive health care and family planning services.

17. In State Fiscal Year 2024, approximately 88,500 individual Medicaid enrollees sought care at Planned Parenthood affiliates across the state, with approximately 156,000 claims processed for services provided by Planned Parenthood affiliates based in NYS.

18. There are areas of NYS in which Planned Parenthood has provided 100% of the total Medicaid-funded reproductive health care and family planning services to the Medicaid populations. For example, in 17 counties (over a quarter of NYS counties), most of which are rural, Planned Parenthood has provided 98-100% of the Family Planning benefit services that qualify for the higher FMAP.

19. Based on this, there is a heightened concern that, in some areas of the State, should Planned Parenthood no longer be able to serve these patients, there simply may not be an available provider of those services.

**NYS Actions Necessary to Implement the Defund Provision**

20. NYS will suffer administrative burdens if the Defund Provision, as defined in the complaint in this matter, goes into effect because the definition of Prohibited Entities is unworkable.

21. To prepare to implement the Defund Provision, NYS DOH is working to identify impacted Planned Parenthood providers and estimate the total financial impact to those providers.

22. However, DOH will otherwise struggle to identify impacted providers other than Planned Parenthood entities. Specifically, the statute includes among its criteria that the "Prohibited Entity" be an essential community provider that "primarily engages in family planning services, reproductive health, and related medical care." In its normal course of

business, DOH generally does not determine what type of services its participating providers "primarily engage in," nor does the statute set out criteria for making that determination.

23.    The Defund Provision does not specify whether "primarily engage in" is assessed by self-designation of the entity in question, which the DOH does not currently ask for, or whether the State is to make that determination itself. And if it is the latter, the Defund Provision does not describe how the State would go about doing so; the Defund Provision does not specify what universe the "primarily engage in" criterion is measured against—whether it is limited to the universe of Medicaid billing or whether it includes services billed to private insurance or private pay, which data the State does not collect. And assuming it can even be determined under the Defund Provision's vague terms which entities are considered prohibited, NYS will also have to provide guidance to participating providers about whether they are or are not considered a Prohibited Entity.

24.    Due to the ambiguity regarding the entities that qualify as Prohibited Entities and the timing of when the Defund Provision actually takes effect, the DOH will likely face inquiries from potentially affected entities, which will also take staff time and resources to answer.

25.    Further, NYS is conducting a review of its claims payment and processing system to identify the necessary changes that will have to be made. No infrastructure currently exists to filter out such providers falling under the definition of "Prohibited Entities". DOH currently has no system in place to identify and exclude only certain providers from Medicaid participation based on the criteria specified in the Defund Provision. The Medicaid Management Information System ("MMIS"), the system that manages claims, payments, and other related data for the state's Medicaid program, is approximately 30 years old and is extremely inflexible. Minor changes to this system often take over 12 months.

26.    Implementing the Defund Provision would cost money and time as DOH would be required to develop a new strategy and supporting infrastructure to identify such transgressors from scratch, before being able to remove providers that violate the policy.

Page 7 -    DECLARATION OF JOHANNE MORNE
TBW/rn1/993784839

27. Following the identification of impacted providers, DOH will have to provide guidance to these Prohibited Entities as to how the restrictions impact billing for services previously provided and to be provided, given that providers have 90 days to initially submit claims to Medicaid. DOH may have to communicate with Prohibited Entity providers to direct them not to bill for any services once the Defund Provision goes into effect.

28. Failure to incorporate the necessary infrastructure changes would result in NYS DOH being at risk of having to return any federal funds used to pay claims submitted by Prohibited Entities defined under the Defund Provision, thereby placing the costs directly onto NYS and reducing federally provided matching Medicaid funds.

**Impact of the Defund Provision**

29. If Planned Parenthoods along with any other Prohibited Entities are excluded from federal Medicaid reimbursement, the impact on NYS and its residents would be profound. DOH is concerned that these entities may need to close health centers in NYS once excluded from Medicaid. If that occurs, that will compound the impact on NYS' health system and residents. For example, the estimated additional cost to NYS of fully covering the services offered by Planned Parenthood, if matching federal funds cannot be accessed, is $21 million.

30. At an estimated cost of $21 million for Planned Parenthood alone, without federal matching funds, NYS Medicaid is not currently prepared to fully cover the cost of the variety of healthcare services provide by Planned Parenthood affiliates to NYS Medicaid members, as well as the additional investments in State infrastructure and operations that would be necessary.

31. Without matching federal funding, Planned Parenthood affiliates and any other Prohibited Entities will be at risk of folding, ceasing continued operations and provision of services. This would create a gap in access to needed services for all New Yorkers, including some our most vulnerable residents covered by Medicaid.

32. It is inevitable that some patients who went to Planned Parenthood or other Prohibited Entities for services will be unable to find a provider for reproductive healthcare and

Page 8 -    DECLARATION OF JOHANNE MORNE
TBW/rn1/993784839

family planning services. The result would likely be a multitude of adverse outcomes for those who can no longer find care or have to travel far distances to access care, including, but not limited to, lack of timely prenatal care, cancer screenings, and prevention and treatment of STIs.

33.     To avoid these negative outcomes, the federal government would need to again provide federal funding for these health centers in NYS as it has done for decades.

34.     The exclusion of Planned Parenthood and other Prohibited Entities from Medicaid reimbursement will not only have a negative consequence on the health and well-being of residents of NYS but it will also have a significant impact on NYS's entire health care system and the state budget.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on August 28, 2025.

_Johanne E Morne_
JOHANNE MORNE