## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

State of California, et al.,

        *Plaintiffs,*

    v.

U.S. Department of Health and Human
Services, et al.,

        *Defendants.*

Case No.: 1:25-cv-12118-IT

*Leave to file granted on September 29, 2025*

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................1

Argument ...........................................................................................................................2

    I.     Plaintiffs Are Likely to Succeed on the Merits of Their Complaint.......................2

          A.     The Defund Provision Fails to Provide Clear Notice.................................2

          B.     The Defund Provision Is a Retroactive Condition That Intrudes on States' Traditional Authority Over the Medical Profession ......................6

    II.    Plaintiff States Have Standing and Have Shown Irreparable Harm ....................7

          A.     Plaintiff States Have Established Article III Standing ..............................7

          B.     Plaintiff States Are Already Suffering Irreparable Harm .........................9

          C.     Plaintiff States Did Not Unduly Delay Seeking Injunctive Relief...........11

    III.   The Balance of Equities and the Public Interest Weigh in Plaintiff States' Favor ...................................................................................................................12

Conclusion .......................................................................................................................13

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Watson*
   10 F.3d 915 (1st Cir. 1993)............................................................................7

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*
   548 U.S. 291 (2006)......................................................................................5

*Benning v. Georgia*
   391 F.3d 1299 (11th Cir. 2004)......................................................................5

*Cacchillo v. Insmed, Inc.*
   638 F.3d 401 (2d Cir. 2011) ..........................................................................7

*Capen v. Campbell*
   134 F.4th 660 (1st Cir. 2025).........................................................................7

*Charles v. Verhagen*
   348 F.3d 601 (7th Cir. 2003) .........................................................................5

*Cook Cnty., Illinois v. Wolf*
   962 F.3d 208 (7th Cir. 2020) .......................................................................10

*Cutter v. Wilkinson*
   423 F.3d 579 (6th Cir. 2005) .........................................................................5

*Davis v. Monroe County Board of Education*
   526 U.S. 629, 642 (1999) ..............................................................................4

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*
   145 S. Ct. 2121 (2025) ..................................................................................8

*Doe v. Trump*
   766 F. Supp. 3d 266 (D. Mass. 2025).............................................................8

*Family Planning Association of Maine v. HHS*
   No. 25-1829 (1st Cir. Oct. 16, 2025)..............................................................1

*Florida v. Mellon*
   273 U.S. 12, 18 (1927) ...............................................................................8, 9

*Harris v. McRae*
   448 U.S. 297 (1980) ................................................................................6, 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Jackson v. Birmingham Board of Education*
   544 U.S. 167, 182 (2005)....................................................................................4, 5

*K–Mart Corp. v. Oriental Plaza, Inc.*
   875 F.2d 907 (1st Cir. 1989)..................................................................................9

*League of Women Voters of United States v. Newby*
   838 F.3d 1 (D.C. Cir. 2016)..................................................................................12

*Maine v. U.S. Dept. of Agric.*
   778 F. Supp. 3d 200 (D. Me. 2025)......................................................................12

*Mayweathers v. Newland*
   314 F.3d 1062 (9th Cir. 2002) ...............................................................................5

*McBreairty v. Miller*
   93 F.4th 513 (1st Cir. 2024)...................................................................................7

*Medina v. Planned Parenthood S. Atl.*
   145 S. Ct. 2219 (2025) ......................................................................................6, 8

*New Jersey v. Trump*
   131 F.4th 27 (1st Cir. 2025).............................................................................8, 12

*Pennhurst State Sch. & Hosp. v. Halderman*
   451 U.S. 1 (1981) ........................................................................................3, 4, 6

*Planned Parenthood Fed'n of Am., Inc. v. Kennedy*
   No. 25-11913, 2025 WL 2101940, at *28-29 (D. Mass. July 28, 2025).........11, 12

*Planned Parenthood Fed'n of Am., Inc. v. Kennedy*
   No. 25-1698 (1st Cir. Sept. 11, 2025) .............................................................1, 2

*Rhode Island v. Trump*
   No. 25-1477, 2025 WL 2621593, at *10 (1st Cir. Sept. 11, 2025).......................10

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*
   397 F.3d 56 (1st Cir. 2005).............................................................................11, 12

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*
   102 F.3d 12 (1st Cir. 1996)....................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Somerville Pub. Sch. v. McMahon*
  139 F.4th 63 (1st Cir. 2025)..................................................................... 10, 12

*Tennessee v. Dep't of Educ.*
  104 F.4th 577 (6th Cir. 2024) ...........................................................................11

*Texas v. EPA*
  829 F.3d 405 (5th Cir. 2016) ............................................................................11

*United States v. Texas*
  599 U.S. 670 (2023) ........................................................................................8, 9

*Van Wyhe v. Reisch*
  581 F.3d 639 (8th Cir. 2009) .............................................................................5

**STATUTES**

42 United States Code
  § 2000cc(b)(1)...................................................................................................4

One Big Beautiful Bill Act
  § 71113 .................................................................................................... 2, 5, 12
  § 71113 (b)(1) ...............................................................................................2, 7

**OTHER AUTHORITIES**

42 Code of Federal Regulations
  § 447.45(d)......................................................................................................2, 5

## INTRODUCTION

The Defund Provision fails to provide constitutionally mandated notice; imposes retroactive conditions; and ultimately jeopardizes the health of millions of patients, which will result in increased healthcare costs for Plaintiff States. Defendants do not seriously dispute these points. Instead, they argue that so long as Congress notifies Plaintiff States that a condition exists it has no duty to explain what that condition entails. This theory runs counter to decades of Supreme Court case law mandating that Congress provide adequate and unambiguous notice when it deploys its spending powers. Further, the Defund Provision is an unanticipated and drastic departure from Plaintiff States' traditional authority to regulate healthcare providers' qualifications. Accordingly, the preliminary injunction factors weigh in Plaintiff States' favor.

Contrary to Defendants' claims, *see, e.g.*, Opp. to Mot. for Prelim. Inj., Doc. No. 73 at 1 and Notice of Suppl. Auth., Doc. No. 74, the First Circuit's orders in *Family Planning Association of Maine v. HHS*, No. 25-1829 (1st Cir. Oct. 16, 2025) and *Planned Parenthood v. Kennedy*, No. 25-1698 (1st Cir. Sept. 11, 2025), do not suggest otherwise. In addition to the materially distinct procedural posture of those orders,[1] neither of those cases dealt with the same substantive claims raised in this case or addressed the current harm and clear risk of future harm the Defund Provision presents to Plaintiff States. This Court should grant Plaintiff States' preliminary injunction request.

---

[1] In *Family Planning Association*, the First Circuit emphasized the far more demanding standard for obtaining an injunction pending appeal after the same relief was denied by the district court. *See* No. 25-1829 at 1-2. And in *Planned Parenthood*, the First Circuit issued a stay of the preliminary injunction orders pending appeal before the filing and consideration of the full record on appeal. *See* No. 25-1698, at 2.

1

## ARGUMENT

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR COMPLAINT

### A.    The Defund Provision Fails to Provide Clear Notice

Defendants do not seriously refute that the Defund Provision, by its plain text, imposes vague and contradictory conditions on Plaintiff States. *See* Doc. No. 73, at 6-9. Defendants acknowledge that the Defund Provision's "effective" date of enactment (July 4, 2025)—the date Plaintiff States must stop providing payments to "prohibited entities" for Medicaid services— conflicts with its date for determining a providers' "prohibited entity" status (October 1, 2025). *See id.* at 9 n.1; Pub. L. No. 119-21, § 71113, 139 Stat. 300 (2025) ("Section 71113"). And Defendants do not refute that this conflict leaves Plaintiff States in legal limbo, obligated to make payments on providers' claims, 42 C.F.R. § 447.45(d), while risking claw back of funds by Defendants at some indeterminate future point, *see* Doc. No. 73 at 9 n.1.[2]

Defendants also fail to provide any clarity on the meaning of the term "affiliate"—a crucial component for identifying "prohibited entities," *see* Section 71113 (b)(1)—and instead offer contradictory arguments that only underscore the ambiguity of the term. Defendants claim that Plaintiff States can blindly rely on healthcare providers self-identifying as "affiliates," but Defendants themselves do not define the scope of the term. *See* Doc. No. 73 at 8-9. They suggest that Plaintiff States should look to Black's Law Dictionary for clarity, yet they also say that "HHS is developing guidance regarding affiliate determinations," without sharing when Plaintiff States can expect such guidance. *Id.* And their claim that Plaintiff States can identify

---

[2] This issue is not moot as Defendants suggest, *see* Doc. 73 at 9 n.1, because many Plaintiff States are currently making payments for services rendered between July 1, 2025 and October 1, 2025, *see* 42 C.F.R. § 447.45(d). The risk of Defendants clawing back Medicaid funds for those payments persists. Defendants have not identified prohibited entities for the States (or provided any other guidance) and therefore the States still may be paying unidentified prohibited entities for ongoing claims.

"at least some entities that fall within the [Defund] Provision's scope" does nothing to explain the provision's scope.[3] *Id.* at 8. In short, Defendants do not rebut that the Defund Provision fails to give Plaintiff States clear notice on how to comply with its conditions.

Instead, Defendants argue that Congress need not give States clear notice about the nature of the conditions it imposes on the receipt of federal funds, so long as Congress provides adequate notice that some condition exists—no matter how vague or indeterminate the condition may be. Doc. No. 73 at 6-7. But this theory disregards longstanding Supreme Court precedent, including key language in *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981), which Defendants omit in their discussion of that decision. *See* Doc. No. 73 at 6-7. "[L]egislation enacted pursuant to the spending power is much in the nature of a contract," and "the legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst*, 451 U.S. at 17. There can be "no knowing acceptance if a State is unaware of the conditions *or is unable to ascertain what is expected of it*." *Id.* (emphasis added). Accordingly, Congress is required to "speak with a clear voice" so that States can "exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* To be sure, Congress is not required to list every factual instance where a State will fail to comply with a condition. But Defendants' theory that Congress needs "simply [to] make[] clear that acceptance of federal money obligates the States

---

[3] Defendants' briefing before the First Circuit in Planned Parenthood's case further confused the meaning of the term "affiliate." *See* Defendant-Appellants Br., *Planned Parenthood Fed'n of Am., Inc. v. Kennedy,* Case No. 25-1698, at 1-2 (1st Cir. Sept. 29, 2025). Defendants suggested that the Defund Provision allows any Planned Parenthood Member "to avoid the law's application … solely … by ceasing to provide abortions, among other possibilities." *Id.* at 14. But elsewhere, Defendants argued that whether a Non-Qualifying Member is an "affiliate" of a prohibited entity turns on ownership or control, rather than merely stopping providing abortions. *Id.* at 23. Then Defendants appear to suggest that all Members of PPFA are banned from receiving federal Medicaid funds simply by virtue of that membership. *Id.* at 24.

to comply with *a* condition," Doc. No. 73 at 7 (emphasis added), without sufficient notice to understand *how* to comply with that condition, would gut *Pennhurst*'s "crucial inquiry" of "whether Congress spoke so clearly that we can fairly say that the State could make an informed choice," *Pennhurst*, 451 U.S. at 25.

None of the cases that Defendants cite support their theory. Doc. No. 73 at 7. Neither *Jackson v. Birmingham Board of Education* nor *Davis v. Monroe County Board of Education* stand for the proposition that Congress may impose ambiguous conditions on federal funding, so long as it is apparent that "some condition[]" on funding exists. Doc No. 73 at 7. Rather, both cases considered whether school boards could be liable for damages under Title IX's broad prohibition against discrimination. *Jackson,* 544 U.S. 167, 182 (2005); *Davis,* 526 U.S. 629, 642 (1999)).[4]  Rejecting arguments that Title IX's broad language failed to provide notice of potential liability for deliberate indifference (*Davis*) and retaliation (*Jackson*), the Court opined that such determinations "depend[] on a constellation of surrounding circumstances, expectations, and relationships," *Davis*, 526 U.S. at 651, and that Congress could not be required to "list" all  "specific discriminatory practices" for notice to be adequate, *Jackson*, 544 U.S. at 175.  The Court nevertheless engaged in a close inquiry of the text and context of Title IX and determined that the school boards had sufficient notice that they could be held liable for the particular conduct at issue.  *See Jackson*, 544 U.S. at 178, 183-84; *Davis*, 526 U.S. at 640-45. Contrary to Defendants' claims, the Court did not uphold liability even though it determined that Title IX imposed an ambiguous condition on federal funding—the Court upheld liability because

---

[4] *Davis* addressed a schoolboard's liability for deliberate indifference to sexual harassment and *Jackson* addressed liability for retaliation. *Davis,* 526 U.S. at 629*; Jackson,* 544 U.S. at 167.

the school boards "could not have realistically supposed" that Title IX did not proscribe the conduct at issue. *Jackson*, 544 U.S. at 183-84.

Defendants' remaining cases, all of which are out-of-circuit opinions considering the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), fare no better. *See* Doc. No. 73 at 7. Under RLUIPA, any institution receiving federal funds is forbidden from substantially burdening the plaintiff's exercise of religion absent a showing that the burden "is the least restrictive means of furthering" a compelling government interest. 42 U.S.C. § 2000cc(b)(1). Parties in each of these cases challenged the "least restrictive means" standard, arguing that it failed to provide adequate notice that they had waived sovereign immunity in some cases, and each time the Courts of Appeals rejected their argument on grounds that RLUIPA's language clearly showed a waiver of sovereign immunity and "Congress is not required to list every factual instance in which a state will fail to comply with a condition." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002); *see also Van Wyhe v. Reisch*, 581 F.3d 639, 650–51 (8th Cir. 2009) (similar); *Cutter v. Wilkinson*, 423 F.3d 579, 586 (6th Cir. 2005) (similar); *Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004) (similar); *Charles v. Verhagen*, 348 F.3d 601, 608 (7th Cir. 2003) (similar). But the Defund Provision does not entail a waiver of the Plaintiff States' sovereign immunity or present a test by which Plaintiff States can use their own judgment; instead it mandates that Plaintiff States not pay "prohibited entities," which it defines using vague and contradictory language that Plaintiff States have shown they cannot implement, and face potentially draconian results if Plaintiff States err. Section 71113; 42 C.F.R. § 447.45(d). "States cannot knowingly accept" a deal with the Federal Government unless they "clearly understand . . . the obligations" that accompany the funds. *Arlington Cent. Sch. Dist.*

*Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).  The Defund Provision does not provide that

"clear[] understand[ing]."

**B.    The Defund Provision Is a Retroactive Condition That Intrudes on States' Traditional Authority Over the Medical Profession**

The Defund Provision also constitutes an unconstitutional retroactive condition that

Plaintiff States could not have anticipated when they joined Medicaid.  *Pennhurst*, 451 U.S. at

25.  The Defund Provision usurps Plaintiff States' "primary responsibility over matters of health

and safety [and] the regulation of the practice of medicine," including determination of the

healthcare providers that "qualify" to provide care for Medicaid participants.  *Medina v. Planned*

*Parenthood S. Atl.*, 145 S. Ct. 2219, 2227 (2025).  Defendants argue that the Defund Provision

"does not intrude on State authority," which Defendants narrowly and inaccurately describe as

merely the authority to bar providers from the practice of medicine.  Doc. No. 73 at 9-10.  But by

restricting federal funding for an unknown number of "prohibited entities," the Defund Provision

undermines Plaintiff States' broad traditional authority to regulate providers' qualifications and

seek reimbursement for payments to such qualified providers, thus usurping Plaintiff States'

policy judgments.  Plaintiff States have never had to forfeit such authority in this way to

participate in Medicaid.

Defendants claim the Defund Provision represents only Congress' and the President's

desire to halt federal funding for abortion.  Doc No. 73 at 10.  But their argument fails for two

reasons.  First, federal law has long prohibited the use of federal funds, including Medicaid

funds, for abortions, except under very narrow circumstances.  *See Harris v. McRae*, 448 U.S.

297, 315 (1980).  Second, the Defund Provision actually authorizes the payment of Medicaid

funds to entities that provide abortions, if those entities are: 1) for-profit entities; 2) received less

than $800,000 in Medicaid funds in 2023; or 3) are not "essential community providers" as defined in the provision. *See* Section 71113(b)(1). In reality, the Defund Provision upends Plaintiff States' traditional authority for one purpose: to target Planned Parenthood. The Defund Provision is an unconstitutional retroactive condition imposed on Plaintiff States.

## II.    PLAINTIFF STATES HAVE STANDING AND HAVE SHOWN IRREPARABLE HARM

In their opposition, Defendants merge the "injury in fact" element of Article III standing with the "irreparable harm" element of a preliminary injunction. *See* Doc No. 73 at 11-17. But these are different standards with different requirements. Plaintiff States meet both standards.

### A.    Plaintiff States Have Established Article III Standing

Plaintiff States have shown an adequate injury for the purposes of standing based on a classic pocketbook injury: the direct administrative costs of complying with the Defund Provision. Although Defendants claim that the administrative costs are "minimal," Doc. No. 73 at 13, the bar for pleading an economic injury for the purpose of standing is low; "even an identifiable trifle" suffices. *Adams v. Watson*, 10 F.3d 915, 924 (1st Cir. 1993). Contrary to Defendants' claims otherwise, Plaintiff States' standing for their preliminary injunction "should be judged on the sufficiency of the allegations of the complaint." *McBreairty v. Miller*, 93 F.4th 513, 518 n.2 (1st Cir. 2024); *see also Capen v. Campbell,* 134 F.4th 660, 667 (1st Cir. 2025) (same). But even under Defendants' standard, Plaintiff States have more than adequately "set forth by affidavit[s] . . . specific facts," showing that the Defund Provision will impose specific administrative costs and burdens on them.[5] *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir.

---

[5] *See, e.g.,* J. Connolly Decl. (MN), Doc. No. 62-15 at 7; Peterson Decl. (HI) Doc. No. 62-10 at 5; Morne Decl. (NY), Doc. No. 62-20 at 7-8; Standridge Decl. (WI), Doc. No. 62-24 at 4; Phelan Decl. (IL), Doc. No. 62-11 at 4; Probert Decl. (ME), Doc. No. 62-13 at 9; Adelman
(continued…)

2011). Even without these declarations, all Plaintiff States are parties to the Medicaid "contract" and are therefore the direct object of any government regulation that changes its terms. *See Medina*, 145 S. Ct. at 2226 ("In return for federal funds, States agree 'to spend them in accordance with congressionally imposed conditions'"); *see also* Costello Decl., Doc. No. 73-1 at 3 ("Medicaid provider payment occurs *at the state level*; CMS does not directly pay providers.") (emphasis added). "When a plaintiff is the 'object' of a government regulation, there should 'ordinarily' be 'little question' that the regulation causes injury to the plaintiff." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2134 (2025).

Further, Defendants' claim that *United States v. Texas* forecloses Plaintiff States from establishing an injury-in-fact of higher healthcare costs "verges on misleading." *Doe v. Trump*, 766 F. Supp. 3d 266, 276 n.8 (D. Mass. 2025), *aff'd sub nom. New Jersey v. Trump*, No. 25-1200 (1st Cir. Apr. 23, 2025), and *aff'd*, No. 25-1169 (1st Cir. Oct. 3, 2025). As a court in this district has already explained, "[t]he language [in *Texas*] upon which [defendants] most heavily rely appears in a footnote," and "[c]ontrary to the defendants' characterization, that footnote is not a 'holding,' and it does not 'foreclose[ ]' the State plaintiffs' standing in this case." *Id.* Rather, that footnote merely "warns that 'standing can become more attenuated' when based on 'indirect effects' of federal action," but "it stops short of saying such effects could never satisfy Article III." *Id.* (quoting *United States v. Texas*, 599 U.S. 670, 681 n.3 (2023)). *Texas* dealt with a "highly unusual claim" to compel the federal government to pursue more "arrests and prosecutions" for violations of immigration laws on the basis that state plaintiffs would be required to incarcerate or supply social services to noncitizens.[6] 599 U.S. at 674. Unlike in

---

Decl. (NJ), Doc. No. 62-18 at 7-8; Smith Decl. (NM), Doc. No. 62-19 at 9; Gilbert Decl. (CA), Doc. No. 62-6 at 8-9; Sandoe Decl. (OR), Doc. No. 62-21 at 9-10.
        [6] *Florida v. Mellon*, the other case Defendants cite, Doc. No. 73 at 15, is similarly
                                                                            (continued…)

*Texas*, the harms that Plaintiff States allege here include direct interference with States' operation of their own programs and direct pocketbook injuries; the Plaintiffs do not seek relief that would interfere with an area typically reserved for the Executive Branch's enforcement discretion.

### B.    Plaintiff States Are Already Suffering Irreparable Harm

Defendants do not seriously dispute that the increased healthcare costs of missed preventative care risks serious irreparable harm to Plaintiff States, instead claiming only that Plaintiff States rely on an attenuated chain of circumstances. *See* Doc. No. 73 at 15 (quoting *Texas*, 599 U.S. at 681 n.3). But every case that Defendants rely on discusses the "traceability" requirements of Article III standing, not the "irreparable harm" element of a preliminary injunction. *See* Doc. No. 73 at 15-17. The First Circuit has made clear that a finding of "irreparable harm" may "rest on a number of assumptions about . . . business, customers' attitudes, and the way in which the marketplace operates," so long as "the assumptions are reasonable and are consistent with the available evidence." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 102 F.3d 12, 20 (1st Cir. 1996) (district court's determination that the risk of irreparable harm to business' "goodwill and reputation" was not unduly speculative); *see also K– Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 915 (1st Cir. 1989) (affirming preliminary injunction because "loss of revenues resulting from considerations such as diminished visibility, restricted access, less commodious parking, and the like" was sufficient for irreparable harm).

---

inapposite. There, the Supreme Court rejected a claim of injury because it was "purely speculative, and, at most only remote and indirect." 273 U.S. 12, 18 (1927). In contrast, even setting aside the direct compliance costs at issue here, Plaintiff States have offered clear and ample evidence tracing the increased healthcare costs that will occur absent interim relief. *See, e.g.*, Kavanaugh Decl., Doc. No. 62-5 at 6-34.

Here, Plaintiff States' assertion that their healthcare costs will increase is reasonable, supported by the evidence, imminent, and irreparable. Plaintiff States provided ample evidence showing that the Defund Provision is already forcing Planned Parenthood health centers to close or restrict services to low-income Medicaid patients; the loss of services that Planned Parenthood health centers and other "prohibited entities" provide to hundreds of thousands of Medicaid patients will significantly disrupt Plaintiff States' healthcare ecosystems; other health centers will not be able to absorb this huge volume of and provide care for those patients; and many Medicaid patients in Plaintiff States will forego early screenings and treatments. *See e.g.,* Doc. No. 63 at 14-19 (describing increased healthcare costs that will harm Plaintiff States). Plaintiff States even provided evidence of case studies in Iowa and Texas, *see id.* at 17-18, confirming that excluding Planned Parenthood will, for Plaintiff States, result in "a significant increase in costs it must bear and a higher . . . risk of . . . communicable diseases for its population as a whole." *Cook Cnty., Ill. v. Wolf*, 962 F.3d 208, 233 (7th Cir. 2020); *see also Rhode Island v. Trump*, No. 25-1477, 2025 WL 2621593, at *10 (1st Cir. Sept. 11, 2025) (irreparable harm includes "obligation of new debt," "inability to pay existing debt," and "impediments to planning, hiring, and operations"); *Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 75 (1st Cir. 2025) (irreparable harm occurs where federal government action would "jeopardize [plaintiffs] ability to proceed with their programs"). Beyond their conclusory statements, Defendants offer no evidence disputing this substantial showing of harm.

As Plaintiff States explained in their motion, their administrative costs and burden provide additional grounds for a finding of irreparable harm. *See* Memo. of Pts. & Auth. in Supp. of Pls.' Prelim. Inj. Mot., Doc. No. 63 at 13-14. Defendants' attempts to wave away those harms as "de minimis" are unavailing. Doc. No. 73 at 13. First, Defendants offer scarce evidence for that

claim.  *Id.*  Second, even supposing that administrative costs that include overhauling Medicaid

database infrastructure and undertaking public education outreach are "minimal," such costs still

constitute an irreparable injury.  "'Irreparable injury' in the preliminary injunction context means

an injury that cannot adequately be compensated for either by a later-issued permanent

injunction, after a full adjudication on the merits, or by a later-issued damages remedy."  *Rio

Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005).  As such, Plaintiff

States are "likely to incur unrecoverable compliance costs in the absence of a preliminary

injunction, [because the] government's sovereign immunity typically makes such losses

irreparable."  *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024); *see also Texas v.

EPA*, 829 F.3d 405, 433 (5th Cir. 2016) ("complying with a regulation later held invalid almost

*always* produces the irreparable harm of nonrecoverable compliance costs") (emphasis in

original).

### C.    Plaintiff States Did Not Unduly Delay Seeking Injunctive Relief

Plaintiff States did not unduly delay seeking injunctive relief.  This Court's preliminary

injunction in Planned Parenthood's case ensured that Plaintiff States could continue to provide

federal reimbursement to Planned Parenthood health centers, thereby enabling Plaintiff States to

maintain a significant proportion of their Medicaid-funded family planning and reproductive

healthcare services. *Planned Parenthood Fed'n of Am., Inc. v. Kennedy*, No. 25-11913, 2025 WL

2101940, at *28-29 (D. Mass. July 28, 2025).  The First Circuit's recent stay of that injunction,

however, makes even more imminent the irreparable harms to Plaintiff States' healthcare costs

and ecosystems, thereby making Plaintiff States' present motion necessary.

### III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN PLAINTIFF STATES' FAVOR

The balance of equities and the public interest weighs heavily in Plaintiff States' favor. The public has a substantial interest in ensuring that Medicaid patients continue to receive healthcare and in avoiding the short- and long-term harms the Defund Provision will impose. *See Rio Grande*, 397 F.3d at 77. A preliminary injunction also maintains Plaintiff States' traditional authority over matters of health and safety and determining which healthcare providers qualify for Medicaid.

Defendants argue that acts of Congress should be presumed to be constitutional, but such a presumption does not foreclose this Court's analysis: the Defund Provision clearly violates Congress' spending powers, *see supra* Section I, and "there is generally no public interest in the perpetuation of unlawful agency action." *Somerville*, 139 F.4th at 76; *see also New Jersey v. Trump*, 131 F.4th 27, 41 (1st Cir. 2025). In contrast, "[t]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Somerville*, 139 F.4th at 76; *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (same).

Defendants will not be harmed by a preliminary injunction maintaining the status quo.[7] Nor will an injunction force the Federal Government to fund abortions, as Defendants suggest, Doc. No. 73 at 18-19, because Medicaid *already* does not fund abortions; funds can only be

---

[7] As such, Defendants are not entitled to a bond nor to their requested stay of any injunctive relief pending appeal. Plaintiff States are enforcing federal rights and public interests, *see supra* Section III, while Defendants will suffer no monetary harm. *See* Section 71113; *Planned Parenthood*, 2025 WL 2101940, at *27 ("Defendants do not contend that Medicaid will have to reimburse more services because of the injunction but only that the reimbursement will be to disfavored providers rather than other providers."). If the Court were to impose a bond, the amount should be nominal. *See id.* at *28 ($100 bond); *Maine v. U.S. Dept. of Agric.*, 778 F. Supp. 3d 200, 238 (D. Me. 2025) ($1,000 bond).

provided for reimbursable healthcare services.  *See Harris,* 448 U.S. at 325.  And nothing about the alleged harm to Defendants' "monetary interests" is irreparable.  Doc. No. 73 at 19. Defendants do not argue that an injunction would force them to reimburse a greater number of services to Medicaid patients, only that Medicaid funds may go to different providers.

## CONCLUSION

The Court should grant Plaintiff States' motion for a preliminary injunction.


Date:  October 29, 2025

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

*/s/ Allyson Slater*
ALLYSON SLATER (BBO No. 704545)
*Director, Reproductive Justice Unit*
MORGAN CARMEN (BBO No. Pending)
*Assistant Attorney General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2811
Allyson.slater@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*


LETITIA JAMES
Attorney General
State of New York

*/s/ Galen Sherwin*
GALEN SHERWIN*
Special Counsel for Reproductive Justice
RABIA MUQADDAM*
Chief Counsel for Federal Initiatives
COLLEEN K. FAHERTY*
Special Trial Counsel
IVAN NEVADO*

Respectfully Submitted,

ROB BONTA
Attorney General
State of California

*/s/ Gillian Hannahs*
GILLIAN HANNAHS*
Deputy Attorney General
NELI PALMA*
Senior Assistant Attorney General
KARLI EISENBERG*
Supervising Deputy Attorney General
ERICA CONNOLLY*
Deputy Attorney General
600 W Broadway, Suite 1800
San Diego, CA 92104
Gillian.Hannahs@doj.ca.gov
*Attorneys for Plaintiff State of California*


WILLIAM TONG
Attorney General
State of Connecticut

*/s/ Alma Nunley*
ALMA NUNLEY*
Special Counsel for Reproductive Rights
JANELLE R. MEDEIROS*
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020

Assistant Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8059
Galen.Sherwin@ag.ny.gov;
*Attorneys for Plaintiff State of New York*

Alma.Nunley@ct.gov
Janelle.Medeiros@ct.gov
*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

By: /s/ Vanessa L. Kassab
VANESSA L. KASSAB*
Deputy Attorney General
IAN R. LISTON*
Director of Impact Litigation
JENNIFER KATE AARONSON*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8803
Jennifer.Aaronson@delaware.gov
*Attorneys for Plaintiff State of Delaware*

**PHILIP J. WEISER**
Attorney General
State of Colorado

/s/ Nora Q.E. Passamaneck
NORA Q.E. PASSAMANECK*
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
nora.passamaneck@coag.gov
*Attorneys for Plaintiff State of Colorado*

**BRIAN L. SCHWALB**
Attorney General
District of Columbia

/s/ Nicole S. Hill
NICOLE S. HILL*
Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
*Attorneys for Plaintiff District of Columbia*

**ANNE E. LOPEZ**
Attorney General
State of Hawaiʻi

/s/ Kalikoʻonālani D. Fernandes
KALIKOʻONĀLANI D. FERNANDES*
Solicitor General
DAVID D. DAY*
Special Assistant to the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Caitlyn G. McEllis*
CAITLYN G. MCELLIS*
Senior Policy Counsel
ELIZABETH MORRIS*
Deputy Bureau Chief, Special Litigation
Bureau
SARAH J. GALLO*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. Lasalle Street
Chicago, IL 60603
312-814-3000
Caitlyn.McEllis@ilag.gov
Elizabeth.Morris@ilag.gov
Sarah.Gallo@ilag.gov
*Attorneys for Plaintiff State of Illinois*


**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ James C. Luh*
JAMES C. LUH*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*


**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Katherine J. Bies*
KATHERINE J. BIES*
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 300-0917
Katherine.Bies@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Halliday Moncure*
HALLIDAY MONCURE*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.: 207-626-8800
halliday.moncure@maine.gov
  *Attorneys for Plaintiff State of Maine*


**DANA NESSEL**
Attorney General
State of Michigan

*/s/ Kyla Barranco*
KYLA BARRANCO*
NEIL GIOVANATTI*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
BarrancoK@michigan.gov
GiovanattiN@michigan.gov
*Attorneys for Plaintiff State of Michigan*


**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Jessica L. Palmer*
JESSICA L. PALMER*
ELIZABETH R. WALSH*
Deputy Attorneys General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101

(609) 696-5279
Jessica.Palmer@law.njoag.gov
Elizabeth.Walsh@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

**RAÚL TORREZ**
Attorney General
State of New Mexico

*/s/ Amy Senier*
AMY SENIER*
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
asenier@nmdoj.gov
*Attorneys for Plaintiff State of New Mexico*

**AARON D. FORD**
Attorney General
State of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN* (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Marc D. Brunton*
MARC D. BRUNTON*
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
(919) 716-0151
mbrunton@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ Christina L. Beatty-Walters*
CHRISTINA L. BEATTY-WALTERS*
Senior Assistant Attorney General
KATE E. MORROW
Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov
Kate.E.Morrow@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

**JOSH SHAPIRO,**
in his official capacity as Governor of the
Commonwealth of Pennsylvania

*/s/ Michael J. Fischer*
MICHAEL J. FISCHER‡
Executive Deputy General Counsel
JENNIFER SELBER‡
General Counsel
JONATHAN D. KOLTASH‡
Deputy General Counsel for Healthcare
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 831-2847

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Dorothea R. Lindquist*
DOROTHEA R. LINDQUIST*
(RI Bar No. 6661)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2098
dlindquist@riag.ri.gov

16

mjfischer@pa.gov
*Attorneys for Plaintiff Governor Josh Shapiro*

**CHARITY R. CLARK**
Attorney General
State of Vermont

*/s/ Jonathan T. Rose*
JONATHAN T. ROSE*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-3171
jonathan.rose@vermont.gov
*Attorneys for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Faye B. Hipsman*
FAYE B. HIPSMAN*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-9487
faye.hipsman@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

*Attorneys for the Plaintiff State of Rhode Island*

**NICHOLAS W. BROWN**
Attorney General
State of Washington

*/s/ Lauryn K. Fraas*
LAURYN K. FRAAS* WSBA #53238
WILLIAM MCGINTY* WSBA #41868
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Lauryn.Fraas@atg.wa.gov
William.McGinty@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

*\*Admitted Pro Hac Vice*
*⚟ Application for pro hac vice admission forthcoming*

17

## CERTIFICATE OF SERVICE

I, Gillian Hannahs, certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By: */s/ Gillian Hannahs*
GILLIAN HANNAHS*
*Deputy Attorney General*
California Department of Justice
600 W Broadway, Suite 1800
San Diego, CA 92104
Email: Gillian.Hannahs@doj.ca.gov

*Counsel for State of California*